**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ALTON D. HOLLIS and LINDA S. HOLLIS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:08-0439** |
| | ) | **Judge Echols** |
| **WILSON COUNTY, JAMES LANIER, and STACY SWINDELL,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

This is a civil rights action filed by Plaintiff Alton D. Hollis ("Alton") and his wife, Plaintiff Linda S. Hollis ("Linda"). Named as Defendants are Wilson County Sheriff's Deputy James Lanier ("Deputy Lanier"), Wilson County Judicial Commissioner Stacy Swindell ("Commissioner Swindell") and Wilson County.

Pending before the Court is a Motion for Summary Judgment filed by Defendant Commissioner Swindell (Docket Entry No. 28), and a Motion for Summary Judgment filed by Defendants Deputy Lanier and Wilson County (Docket Entry No. 33). Even though the Motions for Summary Judgment and accompanying Memorandums (Docket Entry Nos. 31 and 38) are lengthy and contain numerous citations to the record and extensive legal arguments, Plaintiffs have filed Responses and Memorandums in opposition (Docket Entry Nos. 43, 44, 49 & 50) that are brief and conclusory, and which, for the most part, wholly fail to provide considered responses to the arguments raised by Defendants.

1

Also pending is Plaintiffs' Request for Judicial Notice (Docket Entry No. 51) which relates to an earlier case involving Wilson County and its judicial commissioners. Defendant Commissioner Swindell has filed a Response (Docket Entry No. 54) in opposition to that request.

## I. **FACTUAL BACKGROUND**

Because the matter is pending before the Court on Defendants' Motion for Summary Judgment, the facts are construed in Plaintiffs' favor and are as follows.

On August 24, 2007, Marci Hollis ("Marci") completed an application for an Ex Parte Order of Protection ("OOP"). In her narrative in support of the application, Marci alleged that her husband, Tim Hollis ("Tim"), had verbally, emotionally, and physically abused her and that she was afraid of him because of his temper and threats. She also alleged that Tim had whipped their son ("the child" or "the son") with a belt and that she was afraid that her husband would hurt their son. (Marci Hollis Depo., Ex. 1, Narrative). Pursuant to Marci's application, Wilson County Judicial Commissioner Grant Gardner entered an OOP against Tim that same day.

At approximately 7:00 a.m. on August 25, 2007, Wilson County Deputies Chad Vance and Billy King ("Deputy Vance" and "Deputy King," respectively) served the OOP on Tim at his residence. The deputies claim they believed that, in light of the OOP, the child could not be in Tim's custody and they asked Tim where his son was so that he could be returned to his mother, Marci. According to the deputies, Tim told them his son was with the child's grandparents, Alton and Linda Hollis. Tim, on the other hand, claims that he simply told the deputies that his son was not there. In fact, the son was in another room of the residence. Regardless, Deputy Vance radioed dispatch and told the dispatcher Brittany Way ("dispatcher Way") that the OOP had been served and that she should contact Marci to let her know that she could pick up her son at Plaintiffs' residence.

2

After the deputies left, Tim called his father, Alton, at work, to tell him that an OOP had been served on him. After he finished work, Alton met Tim and they drove to the Wilson County Sheriff's Department to see the judicial commissioner and inquire about the OOP. During this time, the child was left in the care of his grandmother, Linda, at Plaintiffs' residence. Tim picked up his son after going to see the judicial commissioner and returned with him to his own residence. In response to a message from dispatcher Way, Marci (who was then in West Tennessee) called the Wilson County Sheriff's Department and was informed that she should drive to a Kangaroo gas station which was near Plaintiffs' house and that deputies would meet her there and assist her in retrieving her son.[1] Marci drove to the gas station, accompanied by her friend Cookie Hazelwood ("Ms. Hazelwood").

Deputy Lanier was dispatched to meet Marci at the Kangaroo station. After meeting with Marci Hollis and Ms. Hazelwood, Deputy Lanier and Wilson County Deputy Jeremy Reich ("Deputy Reich") drove to Plaintiffs' house. After Alton answered the door, Deputy Lanier told Alton that they were there to pick up the child, as they had been advised that he was there. Alton informed the officers that the child was not there.

The parties dispute what occurred next. Deputy Lanier claims he asked Alton if he and his partner could come inside and look for the child and that Alton gave them permission and invited them inside. Deputy Lanier also claims that he went no farther than just inside the door and only approximately two feet into the living room area of Alton Hollis' home. Alton, on the other hand, claims that Deputy Lanier did not ask for permission and was not invited inside. Instead, Deputy Lanier pushed his way inside. Alton also claims that, once inside, Deputy Lanier walked around the living room, going to the doorway of each of the several adjoining rooms and peering into these other

---

[1]Defendants claim that Marci requested officer assistance.

rooms. The parties do agree, however, that Deputy Lanier did not look under beds or in closets, did not move or touch anything, and did not break or take anything.

Regardless of their dispute as to whether Deputy Lanier asked and was given permission to enter the premises, Alton testified in his deposition in this case that even though Deputy Lanier did not request permission before entering his home, he would have given Defendant Lanier his permission had he been asked. In fact, he stated that he could foresee no circumstances under which he would refuse permission for an officer to look for his grandson.

The child was not found in Plaintiffs' house. Alton told Deputy Lanier that the last time he had seen his grandson, the child was with his father, Tim.

The officers left the Plaintiffs' house and went to Tim's home which is directly behind Plaintiffs' residence. The officers repeatedly knocked on all the doors and windows, but nobody answered. At the time, Tim Hollis was in the house and heard the knocking, but refused to answer the door.

When the deputies got no response, Deputy Lanier claims he told Marci that she could speak to a judicial commissioner about possibly obtaining a warrant for Alton's arrest for "custodial interference." Marci claims she was "directed" by Deputy Lanier to go to the judicial commissioner's office to have Alton charged with "custodial interference," and that she was also pressured to do so by Ms. Hazelwood.

Regardless of whether it was suggested or directed, Marci and Ms. Hazelwood then drove to the Wilson County Justice Center and met with Defendant Commissioner Swindell. Deputy Lanier also drove to the Wilson County Justice Center and met Commissioner Swindell.

When she met with Commissioner Swindell, Marci was crying and very upset. Marci gave Commissioner Swindell her version of events and also stated that Deputy Lanier was involved in the

4

incident. Ms. Hazelwood confirmed what Marci told Commissioner Swindell. Deputy Lanier also told Commissioner Swindell what he had observed that day in relation to the child custody matter and what occurred when he attempted to enforce the OOP.

Based upon the information given to her by Deputy Lanier and Marci, Commissioner Swindell drafted an Affidavit of Complaint ("Arrest Affidavit") for an Arrest Warrant alleging custodial interference by Alton. Marci was given the Arrest Affidavit for her review and approval, but now claims she did not read it. Instead, she claims it was given to her and she was told to sign it, which she did. Marci also claims that she was not placed under oath prior to signing the Arrest Affidavit, even though the Arrest Affidavit itself states that she was "duly sworn according to the law" and further states that the "affiant makes oath" that the statements contained in the Arrest Affidavit are true.

The Arrest Affidavit, which Marci Hollis signed states:

August 25, 2007 Wilson County, Mt. Juliet TN
Yesterday August 24, 2007, Marci Hollis came into the commissioners[s'] office and got an order of protection against her husband Timothy Hollis. Wilson County Sheriff's Department dispatch called Mrs. Hollis the morning of August 24 and told her the OOP had been served and a WCSD officer took her son from her husband and gave him to grandparent[s] (Mr. Hollis's parents). Dispatch told Mrs. Hollis her son would be at the grandparent[s'] house until she got there to get him from West TN. A couple of hours later Mrs. Hollis came to get her son and the Grandfather told her he did not know where her son was. Officer Lenier [sic] from WCSD spoke to grandfather Alton Hollis whom said he did not know where the child was. Allowing the removal of this child knowing that the removal violates a child custody determination as defined in 36-6-205, the rightful custody of a mother as defined in 36-2-203, a temporary judgment or court order regarding the custody or care of such child. Charging Alton Hollis with Custodial Interference Violation of TCA 39-13-306.

(Swindell Depo. Exh. 2). The foregoing language is directly above Marci Hollis' signature as Affiant and Commissioner Swindell's signature indicating that the Affiant swore to the truth of the foregoing. Below that is an Arrest Warrant, signed by Commissioner Swindell, which indicates that based upon

5

Marci's statement there was probable cause to believe that Alton committed the offense of custodial interference in violation of T.C. A. § 39-13-306.

Commissioner Swindell set bond at $15,000. She claims that the bond was set in that amount because the charge was a felony, the charge involved a minor child being kept from his mother, and there was the possibility that Alton could flee with the child. Marci claims that Commissioner Swindell told her that the bond was set high in order to force Alton to divulge the child's whereabouts.

Pursuant to the Arrest Warrant, Alton was taken into custody sometime that same evening by Wilson County Deputy Carlton J. Spicer. Alton was then transported to the Wilson County Jail. After his arrival at the jail, Commissioner Swindell claims that Alton appeared before her and she explained the custodial interference charge. She also claims she told Alton that if he provided the child or provided information regarding the whereabouts of the child, the charge would be reduced to a misdemeanor and his bail might also be reduced.

Alton provided Commissioner Swindell with no information regarding the child's whereabouts. Alton was released from the jail at around 10:00 p.m. after his wife posted bail.

Commissioner Swindell had no involvement with Alton Hollis, his arrest, or any member of his family prior to the events on August 25, 2007.

## II. STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be

6

addressed is whether there exists any genuine issue of material fact that is disputed.  See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).  If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial.  If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e).  The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case.  Celotex, 477 U.S. at 325.  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III.  APPLICATION OF LAW

Plaintiffs' Amended Complaint is in eleven counts and alleges both federal and state-law claims against Defendants.  Plaintiffs allege claims under 42 U.S.C. § 1983 against Deputy Lanier for unreasonable search, wrongful arrest and search incident to arrest, and state-law claims for civil conspiracy, outrageous conduct, trespass, civil assault and malicious prosecution. Against Defendant Swindell, Plaintiffs allege wrongful arrest and search incident to arrest, and "setting excessive bail" in violation of 42 U.S.C. § 1983, and state-law claims for civil conspiracy, severe emotional distress, and abuse of process.  Finally, with respect to Wilson County, Plaintiffs allege municipal liability under 42 U.S.C. § 1983, and a state-law claim for failure to train and supervise Defendants Lanier and Swindell.

7

Defendants argue they are entitled to summary judgment on all of the claims asserted by Plaintiffs. As an alternative, Defendant Swindell argues that the Court should grant summary judgment on the federal claims against her, but decline to exercise supplemental jurisdiction over the state-law claims. Having fully considered the matter and the filings made by the parties, the Court will grant summary judgment with respect to all of the federal claims asserted by Plaintiffs and will exercise its discretion and dismiss the state-law claims.

## A. Federal Claims Under Section 1983 Against Commissioner Swindell

In her Motion for Summary Judgment, Commissioner Swindell argues that she is entitled to judicial immunity and therefore judgment as a matter of law with respect to Plaintiffs' Section 1983 claims. The Court agrees.

"'Judicial immunity' is shorthand for the doctrine of absolute immunity that operates to protect judges and quasi-judicial officers alike from suit in both their official and individual capacities." Dixon v. Clem, 492 F.3d 665, 674 (6th Cir. 2007). "This immunity applies even when the judge is accused of acting maliciously and corruptly[.]" Pierson v. Ray, 386 U.S. 547, 554 (1967). Judicial commissioners in Tennessee are entitled to absolute judicial immunity against civil rights claims arising from the performance of their official duties. See, Jones v. Harris, 22 Fed. Appx. 520, 521 (6th Cir. 2001).

While judges, including judicial commissioners, are generally cloaked with immunity, there are two recognized exceptions. "[J]udicial immunity does not apply if the judge's activities were 'non-judicial' in nature or if the judge's actions are performed without any jurisdiction to do so. Brookings v. Clunk, 389 F.3d 614, 617 (6th Cir. 2004).

In this case, Plaintiffs are seeking to hold Commissioner Swindell liable because of her issuance of the arrest warrant, and her setting of a bail which they deem excessive. However, "[i]t

8

is well-settled in this Circuit that the issuance of an arrest warrant is a judicial act for judicial immunity purposes."  DiPiero v. City of Macedonia, 180 F.3d 770, 784 (6th Cir. 1999)(collecting cases).  Further, judges ordinarily set bail and they "enjoy absolute immunity when they do so[.]"  Root v. Liston, 444 F.3d 127, 132 (2nd Cir. 2006).

In this case, Plaintiffs do not argue either that the issuance of an arrest warrant or the setting of bail is not a judicial act.  Rather, they assert that Commissioner Swindell typed up the affidavit and then "replac[ed] her prosecutorial hat with her judicial hat to find probable cause in the affidavit that she, herself, had just drafted, and issued a warrant for Alton Hollis's arrest."  (Docket Entry No. 49 at 1).  Plaintiffs cite Barnes v. Winchell, 105 F.3d 111 (6th Cir. 1997) for the proposition that "criminal prosecution is not a function normally performed by a judicial officer."  They also argue that assisting in the drafting of an affidavit of a complaint is not within the jurisdiction of judicial commissioners.

Contrary to Plaintiffs' suggestion, it is not unheard of for judicial commissioners in Tennessee to type up affidavits in support of arrest warrants.  See, United States v. McWhorter, Case No. 3:07-0159 at 2-3 (M.D. Tenn. 2008) (indicating White County Commissioner typed up arrest affidavit after receiving report from investigator and then issued warrant based upon that affidavit).  Further, Plaintiffs' reliance on Barnes is misplaced.

In Barnes, the Sixth Circuit noted that initiating a criminal proceeding is not a typical judicial function.  However, the court went on to hold that a judge was entitled to absolute immunity even though, after being presented with two complaints, he directed that the charges be for a more serious crime, he notarized one of the complaints, he prepared or assisted in the preparation of one or both of the complaints, and he maliciously refused to dismiss the complaints after the prosecutor determined they were frivolous.  Barnes, 105 F.3d at 1118-1119.

9

Here, the only evidence before the Court is that Commissioner Swindell merely assisted Marci by putting Marci's words on paper. The factual allegations in the Arrest Affidavit represented what Commissioner Swindell learned from Marci and Deputy Lanier. Commissioner Swindell did not conjure up the facts, she did not institute the proceedings which led to Alton's arrest, and she did not act until she was presented with allegations by Marci and Deputy Lanier. See, Brookings, 389 F.3d at 619 ( indicating that Barnes and the cases upon which it relies stand for the proposition that judicial immunity applies unless the judge, motivated by private interests, "single-handedly" initiates criminal proceedings and then passes judgment on the charges which are brought). Summary judgment will be granted in Commissioner Swindell's favor on Plaintiffs' federal claims.

**B. Federal Claims Under Section 1983 Against Deputy Lanier**

In Counts I and II of the Amended Complaint, Plaintiffs bring claims against Deputy Lanier under Section 1983 for unreasonable search and for wrongful arrest and search incident to arrest. Deputy Lanier argues he is entitled to qualified immunity with respect to those claims.

Qualified immunity is an affirmative defense which shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Generally, the inquiry involves first determining whether a constitutional violation occurred, and, if so, a subsequent determination of whether the right infringed was clearly established. McKinley v. City of Mansfield, 404 F.3d 418, 429-30 (6th Cir. 2005). However, while this sequence "is often appropriate, it should no longer be regarded as mandatory." Pearson v. Callahan, 129 S.Ct. 808, 818 (2009). Instead, courts should use "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should

be addressed first in light of the circumstances in the particular case at hand." Id. In this case, Plaintiffs have failed to prove a constitutional violation on the claims asserted against Deputy Lanier.

With respect to Plaintiffs' unlawful search claim, Deputy Lanier argues he is entitled to qualified immunity because Alton gave consent for the search of his residence. Alternatively, he argues that this claim is "moot" and its pursuit would be "futile" because Alton Hollis admitted in his deposition in this case that he would have given consent had he been asked to do so. Plaintiffs do not directly respond to those arguments in their Response, but instead generally assert that genuine issues of fact exist with respect to all of their claims against Deputy Lanier.

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures[.]" U.S. Const. amend. IV. For a search or seizure to be reasonable, it generally must be effectuated pursuant to a warrant based upon probable cause. See, Payton v. New York, 445 U.S. 573, 578 (1980). The Fourth Amendment's prohibition against unreasonable searches "does not apply, however, to situations in which voluntary consent has been obtained, either from the individual whose property is searched, see, Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), or from a third party who possesses common authority over the premises[.]" Illinois v. Rodriguez, 497 U.S. 177, 181 (1990).

In this case, Defendant Lanier argues there was no unlawful search because Alton consented to his residence being searched for the child. However, this contention is directly disputed by Alton who claims that Deputy Lanier pushed passed him into his living room and, without his permission, glanced into the adjacent rooms and then stepped into the kitchen and glanced through that room. Thus, summary judgment is not appropriate based on Alton's alleged consent.

Defendant Lanier next argues that even if Alton did not consent, summary judgment is nevertheless appropriate because Alton repeatedly conceded in his deposition that, had he been asked,

he would have consented to a search of his residence for his grandson. In fact, in response to the question whether there were "any conceivable circumstances in which you would have denied permission to a deputy to come into your house to look for your five-year-old grandson?" he responded "No." (Alton Hollis Depo. at 114).

In order to recover under Section 1983 for an unreasonable search, a "plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury[.]" Heck v. Humphrey, 512 U.S. 477, 487 n.7 (1994); see, Waters v. City of Morristown, 242 F.3d 353, 361 (6th Cir. 2001)(to recover under Section 1983 for an unlawful search and seizure, a plaintiff must establish injury from the search or seizure). The injury need not be personal injury or property damage, but includes recovery for damages directly related to the invasion of privacy, as well as injury to reputation. See, Hector v. Watt, 235 F.3d 154, 157 (3d Cir. 2000); Townes v. City of New York, 176 F.3d 138, 148 (2d Cir. 1999).

Given the record in this case, the Court finds that Plaintiffs cannot prove any actual or compensable injury based upon Deputy Lanier's search of the residence which consisted merely of him stepping into the living room and glancing in the adjoining rooms, and taking one step into the kitchen and glancing around. In their Amended Complaint, Plaintiffs alleged that these actions led to extreme embarrassment and mental anguish. However, in his deposition, Alton Hollis repeatedly and unwaveringly said that had he been asked for permission to search his residence, he would have consented. As such, the Court can conceive of no basis upon which a jury could return a verdict awarding damages on this claim.[2]

---

[2]The Court recognizes that Section 1983 allows for nominal damages which serve as "a symbolic recognition of harm that may be awarded without proof of actual harm[.]" Pagan v. Village of Glendale, 559 F.3d 477, 478 n.1 (6th Cir. 2009). However, Plaintiffs make no request for nominal damages in this case and they do not argue that they are seeking, or entitled to, nominal damages in response to Defendants' Motions for Summary Judgment.

12

Defendant Lanier also argues that he is entitled to qualified immunity on Plaintiffs' false arrest and search incident to arrest claim because Alton was arrested pursuant to a warrant based upon probable cause. Further, to the extent that Plaintiffs are alleging that he gave intentionally false and misleading information to Commissioner Swindell, Deputy Lanier argues the undisputed facts show otherwise.

In response, Plaintiffs conclusorily assert that summary judgment is inappropriate because Defendants Lanier and Swindell acted in concert to prepare an arrest Affidavit which contains "materially false allegations," "nonsensical sentences," and "completely fails to establish probable cause." (Docket Entry No. 49 at 1). With regard to the assertion that the Arrest Affidavit contains "materially false allegations," Plaintiffs point to Marci's Affidavit which was filed in response to the Motions for Summary Judgment and in which she challenges statements made in the Arrest Affidavit.

In her Affidavit in this Court, Marci concedes that on August 24, 2007, she went to the Commissioner's office and secured an OOP against her husband; that she was called the following morning by a sheriff's dispatcher and told the OOP had been served and her son was with his grandparents; that she was told her son would be at the grandparents' house until she got there from West Tennessee; and that she traveled to Wilson County to get her son. She claims, however, that the statement in the Arrest Affidavit to the effect that Alton told her that he did not know the location of her son was not true because she did not speak with Alton at his residence. Marci concedes, however, she does not know what Alton may have told Deputy Lanier because she was not in the vicinity when those two spoke. As for the other allegations in the Arrest Affidavit, specifically those involving legal citations and conclusions, Marci states in her Affidavit in this Court that she does not understand those statements.

13

The Fourth Amendment requires that arrest warrants be issued only upon a showing of probable cause, meaning that there is a "fair probability" that the person named in the warrant committed the crime of which he or she is accused.  <u>Fidley v. Horrighs</u>, 291 F.3d 872, 876 (6th Cir. 2002). The determination of probable cause is based upon a totality of the circumstances and requires reviewing courts "to make a practical commonsense determination" of probable cause, and not engage in "hypertechnical" scrutiny.  <u>Illinois v. Gates</u>, 462 U.S. 213, 236 (1983).

"In a civil rights case, [police officers] are entitled to rely on a judicially secured arrest warrant as satisfactory evidence of probable cause."  <u>Vakillan v. Shaw</u>, 335 F.3d 509, 516 (6th Cir. 2003). Indeed, "an arrest based upon a facially valid warrant is a complete defense" to a Section 1983 claim. <u>Manley v. Paramount's King Island</u>, 229 Fed. Appx. 524, 530 (6th Cir. 2008).

However, "falsifying facts to establish probable cause to arrest and prosecute an innocent person is of course patently unconstitutional."  <u>Hinchman v. Moore</u>, 312 F.3d 198, 205-06 (6th Cir. 2002).  Therefore, "'an officer . . .  cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant.'"  <u>Vakilan</u>, 335 F.3d at 516.

"To overcome an officer's entitlement to qualified immunity, . . . a plaintiff must establish: (1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause."  <u>Id</u>.  Plaintiffs have not done so in this case.

According to Deputy Lanier, on the afternoon of August 25, 2007,  he was told by dispatch that deputies had earlier served an OOP on Tim and that the deputies reported the child listed in the OOP was with his grandmother at the grandmother's (Plaintiffs') house.  Deputy Lanier was also told that Marci, the child's mother, who was then in West Tennessee, was instructed to pick the child up

14

at her in-laws' house. Deputy Lanier received another call from dispatch somewhere between 2:00 and 4:00 that afternoon and was told to meet Marci at a Kangaroo gas station. After meeting Marci, Deputy Lanier directed her to follow him to Plaintiffs' residence and wait while he approached the residence with Deputy Reich. When the officers knocked on Plaintiffs' door, Alton answered. After explaining his purpose to Alton, Deputy Lanier was informed that the child was not there, but that he should "go check with his [the child's] daddy" in the house behind Plaintiffs' residence because the child might be there. (Lanier Depo. at 79). Deputy Lanier went to that house but, after repeatedly knocking on the doors and windows, he received no response.

Plaintiffs have presented no evidence to contradict these facts. Nor have they made a showing, let alone a substantial showing, that Deputy Lanier told Commissioner Swindell a deliberate falsehood or showed a reckless disregard for the truth. Based upon what she was told by Deputy Lanier, and, more importantly, what she was told by Marci, Commissioner Swindell drafted the Arrest Affidavit which indicated: (1) Marci requested and received an OOP against her husband, Tim; (2) the child was named in the order of protection; (3) Marci was told by Wilson County dispatch that the OOP had been served, that the child was at Plaintiffs' residence, and that she should return from West Tennessee to pick up her child at the residence; and (4) both Marci and Deputy Lanier were told by Alton that he did not know where the child was.

In their response to the Motion for Summary Judgment, Plaintiffs merely state that Defendants Swindell and Lanier "acted in concert to prepare an Affidavit of Complaint . . . purporting to charge Alton Hollis with the crime of custodial interference in violation of Tenn. Code Ann. § 39-13-306." (Docket Entry No. 50 at 1). However, vague allegations unsupported by material facts are insufficient to state a conspiracy claim under Section 1983. Fieger v. Cox, 524 F.3d 770, 777 (6th Cir. 2008). Moreover, mere conclusion and opinions are insufficient to withstand summary judgment; instead,

15

Plaintiffs must present evidence from which a jury could find for Plaintiffs.  Nguyen v. Michigan, 1993 WL 1231  at *3 (6th Cir. 1993).

The only "evidence" Plaintiffs direct the Court to in opposition to the Motion for Summary Judgment is Marci's Affidavit in this case in which she purports to disavow that which she swore to before Commissioner Swindell.  Specifically, on the issue of false allegations in the Arrest Affidavit, Plaintiffs point to paragraphs 12 and 14 of Marci's Affidavit.  Those paragraphs read:

> 12.  The next allegation of the narrative in the affidavit:
> > *Wilson County Sheriff's Dispatch called Mrs. Hollis the morning of August 24 and told her the OOP had been served and a WCSD officer took her son from her husband and gave him to grandparents (Mr. Hollis' parents)*
> is false with respect to the date (it was Saturday, August 25), but otherwise true with respect to what I was told.  I now believe it to be false that "a WCSD officer took [my] son from [my] husband and gave him to grandparents."

*          *          *

> 14.  The next allegation of the narrative in the affidavit:
> > *A couple of hours later Mrs. Hollis came to get her son and the Grandfather told her he did not know where her son was*
> is false.  Although I came to get my son, I did not approach the Grandfather's (plaintiff Alton D. Hollis's house) or otherwise interact with him.  I did not relate this fact to Defendant Swindell.  When I signed the affidavit I did not understand or intend that I was swearing to the truth or accuracy of all the allegations in the narrative.

(Marci Hollis Aff. ¶¶ 12 & 14).

The fact that the date in the affidavit may have been wrong is not material.  Everyone understood then, and understands now, that Marci was called by dispatch the day after the OOP was issued.  See, Baranski v. Fifteen Unknown Agents, 452 F.3d 433, 452 (6th Cir. 2006)(mere typographical errors do not render a warrant invalid) .

Further, Marci's present "belief" that she was falsely informed her son was taken from her husband and given to his parents is not a fact and, in any event, says nothing about what she told the Commissioner. It also says nothing about what Deputy Lanier was told by dispatch.

Marci's claim in Paragraph 14 in her Affidavit that she was not told by Alton that he did not know the location of the child is directly belied by what she swore to in the Arrest Affidavit as being true. Regardless, even if that statement is taken out of the Affidavit, it was not material to the finding of probable cause because Deputy Lanier claims that is what Alton told him.[3]

When all is said and done, there is no evidence that Deputy Lanier lied to, or misled, the Commissioner. The undisputed evidence is that Deputy Lanier had been told that the child, who was named in the OOP, was supposed to be picked up by Marci at the Plaintiffs' house but the child was not there. At Alton's suggestion, he tried Tim's house but got no response. This is essentially what he told the Commissioner. It was the Commissioner's responsibility to determine probable cause, not Deputy Lanier's responsibility. The Commissioner found probable cause for the arrest of Alton on the charge of custodial interference based upon what she was told, including what Marci swore to under oath. While Marci may now be backing away from what she swore to before the Commissioner, it does not change the fact that she represented that everything in the Arrest Affidavit was true. Therefore, Deputy Lanier will be granted summary judgment on Plaintiffs' false arrest claim.[4]

---

[3]In his deposition, Alton does not directly dispute this contention. He testified that when Deputy Lanier asked him if he had the child he responded in the negative and that he did not tell Deputy Lanier exactly where the child was, other than to indicate that he might be with his son, Tim. Similarly, in his Affidavit, Alton states that in response to Deputy Lanier's question about where his grandson was, Alton responded that the last time he saw him, the child was with his "daddy."

[4]Plaintiffs' claim relating to the search incident to arrest fails because Deputy Lanier did not search Alton. He did not execute the arrest warrant and was not there when it was served.

17

## C. Federal Section 1983 Claim Against Wilson County

Plaintiffs seek to impose liability against Wilson County under Section 1983 on the theory that it failed to properly train and/or failed to properly supervise Deputy Lanier and/or Commissioner Swindell.

In Monell v. New York City Dept. of Social Servs., 436 U.S. 658 (1978), the Supreme Court held that municipalities are "persons" within the meaning of section 1983, but also that a municipality could not be held liable under Section 1983 solely because it employed a tortfeasor. Id. at 692. Rather, to hold a municipality liable under Section 1983, a plaintiff must identify a municipal policy or custom that caused plaintiff injury. Id. at 694. Where a failure to train or supervise is the result of a municipality's policy or custom and results in a constitutional deprivation, a municipality can be held liable under Section 1983. See, Jones v. City of Cincinnati, 521 F.3d 555, 560-61 (6th Cir. 2008).

"[T]here are limited circumstances in which an allegation of 'failure to train' can be the basis for liability under § 1983." City of Canton v. Harris, 489 U.S. 378, 387 (1989). The inadequacy of training may serve as the basis for § 1983 liability, but "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [governmental employee] come[s] into contact." Id. at 378.

A claim for inadequate supervision or control is not actionable unless the policymaker either encouraged the specific incident of misconduct or in some other way directly participated in it. Grose v. Caruso, 284 Fed. Appx. 279, 282 (6th Cir. 2008). "'At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" Id. at 282-283.

"To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result

18

of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. Ellis v. Cleveland Muni. Sch. Dist., 455 F.3d 690, 700 (6th Cir. 2006). "'[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" Currie v. Haywood County, 234 Fed. Appx. 369, 327-373 (6th Cir. 2007)(quoting, Perez v. Oakland County, 466 F.3d 416, 430-31 (6th Cir. 2006)).

Plaintiffs have not shown that Deputy Lanier lacked any sort of training, that the training he received was inadequate, or that he was inadequately supervised. They also fail to show that any lack of training or supervision caused the injury of which they now complain. Plaintiffs' proof on their failure to train claim consists of allegations that Deputy Lanier sought a warrant for Alton's arrest, which they claim was based upon lies and/or insufficient evidence. However, one event is not sufficient to establish liability under Section 1983 on a failure to train claim. Perez, 466 F.3d at 430-31 ("allegations that a particular officer was improperly trained are insufficient to prove liability, as are claims that a particular injury could have been avoided with better training"). Nor can a single event serve as a basis for liability on a failure to supervise theory unless it is shown that the municipality either "'encouraged the specific incident of misconduct or in some other way directly participated in it.'" Grose, 284 Fed. Appx. at 282 (quoting, Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999)).

Moreover, Defendants have presented evidence that Deputy Lanier has significant law enforcement training. He has been a police officer for approximately nineteen years, the last seven of which have been with Wilson County where he is a corporal and a shift supervisor. Deputy Lanier is a graduate of the state law enforcement academy, where he took courses on criminal procedure, including courses relating to arrests and searches and seizures. He also participates in forty hours of in-service training every year. Plaintiffs' bald assertion of inadequate training and supervision of

19

Deputy Lanier must fail based upon this record.  See, Matthews v. Jones, 35 F.3d 1046, 1049 (6ᵗʰ Cir. 1994)(summary judgment appropriate on failure to train claim where "record contains no evidence that [officer] was inadequately trained, and, to the contrary, contains evidence of considerable training").

As for Plaintiffs' allegations that Wilson County failed to train and/or supervise Commissioner Swindell, Plaintiffs have not articulated the grounds for their opposition to the Motion for Summary Judgment.  Presumably, they base their opposition on an earlier lawsuit involving Wilson County and its judicial commissioners because they request that "in connection with the pending summary judgment proceedings," the Court "take judicial notice of the pleadings, orders, and other papers" comprising this Court's file in "th[e] civil action styled Staley v. Wilson County, et al., Case 3:04-cv-01127, in which defendant Wilson County agreed to ensure that its judicial commissioners received specific training and supervision in the performance of their functions."  (Docket Entry No. 51 at 1). Plaintiffs leave it to the Court to sift through the "pleadings, orders and other papers" in Staley in an effort to discern the arguments Plaintiffs are trying to make.

This Court can, of course, take judicial notice of its own files, Freshman v. Atkins, 269 U.S. 121, 124 (1925), and therefore Plaintiffs' request will be granted.  Having undertaken a review of that case, the Court finds that Plaintiffs have failed to meet their burden in response to Wilson County's Motion for Summary Judgment.

Staley involved a class of individuals who were arrested by law enforcement officers in Wilson County and who claimed that Wilson County judicial commissioners arbitrarily set bail in an unconstitutional manner.  Wilson County denied the allegations, but nevertheless agreed to a Class Wide Settlement which Judge Trauger approved on June 18, 2007.  In settling the case, Wilson County agreed to a number of things, including that it would provide training to its judicial commissioners on federal, state and constitutional law surrounding the setting of bail, and that bail

20

was to be set in a particular case only after the judicial commissioner considered the factors set forth in T.C.A. § 40-1-118.

The fact that Wilson County entered into a settlement agreement and agreed to provide commissioners training in <u>Staley</u> and Plaintiffs now assert that Wilson County somehow breached the settlement agreement in the prior cases does not mean that Plaintiffs have established a failure to train or a failure to supervise claim under Section 1983 in this case. Rather, to prevail on such claims, Plaintiffs must show deliberate indifference on the part of Wilson County and that the lack of training or supervision led to a *constitutional* deprivation. <u>See</u>, <u>City of Canton</u>, 489 U.S. at 387; <u>Ellis</u>, 455 F.3d at 700.

Here, Plaintiffs in their response papers do not articulate the basis for the alleged constitutional deprivation. The Court's own review of the record indicates that in the depositions taken in this case, Plaintiffs asked numerous questions of Deputy Lanier and Commissioner Swindell about whether Deputy Lanier had any input into the determination of the amount of bail to be set. Presumably this was to shore up an argument (which they never formally make) that this was somehow a violation of the Class Wide Settlement Agreement and/or unconstitutional. However, even if Deputy Lanier offered his opinion, and even if this amounted to a breach of the settlement agreement, it does not follow that Alton was deprived of a constitutional right. <u>See</u>, <u>Galen v. County of Los Angeles</u>, 477 F.3d 652, 663 (9th Cir. 2007)(plaintiff establishes a constitutional deprivation because of a police officer's input into the bail decision only by showing that input "prevented the Commissioner from exercising h[er] independent judgment"); <u>Walden v. Carmack</u>, 156 F.3d 861, 874 (8th Cir. 1998)(sheriff could not be liable under § 1983 for violating the plaintiffs' right to be free from excessive bail, even if he recommended a bail amount to the judicial officer who set plaintiffs' bail, because "setting the bail bond is entirely at the discretion of the presiding judge").

Further, there is no evidence that the bail set in this case was excessive under state law, or under the Constitution. The only evidence before the Court is Commissioner Swindell's deposition testimony that she considered the factors in T.C.A. § 40-1-118 in setting Alton's bail.

In light of the foregoing, summary judgment will be granted on Plaintiffs' federal claims that Wilson County failed to train and/or supervise Commissioner Swindell and/or Deputy Lanier.

**D. State Law Claims Against All Defendants**

In her Motion for Summary Judgment, Commissioner Swindell asserts that, in accordance with the Tennessee Government Tort Liability Act (TGTLA"), the only proper venue for the state-law claims against her is the state circuit court.

The TGTLA provides that the state circuit courts shall have "exclusive original jurisdiction" over TGTLA claims. T.C.A. § 29-20-307. In Gregory v. Shelby County, 220 F.3d 433, 446 (6th Cir. 2000), the Sixth Circuit noted that 28 U.S.C. § 1367(c) provides that a district court may decline to exercise jurisdiction over a claim in "exceptional circumstances" where there are "compelling reasons for declining jurisdiction." The court went on to reason that because T.C.A. § 29-20-307 expresses "a clear preference that TGTLA claims be handled by its own state courts, . . . [t]his unequivocal preference of the Tennessee legislature is an exceptional circumstance for declining jurisdiction." Gregory, 260 F.3d at 466.

Even if, as Plaintiffs' assert, the TGTLA does not apply to all of their claims against Defendants, the Court would still exercise its discretion under 28 U.S.C. 1367(c) and dismiss the state-law claims.

When a district court has dismissed all claims over which it had original jurisdiction, the court has discretion to "decline to exercise supplemental jurisdiction" over state-law claims with respect to which it initially asserted jurisdiction. § 1367(c)(3). The discretion in deciding whether to

exercise supplemental jurisdiction over state-law claims is broad.  <u>Musson Theatrical, Inc. v. Federal</u> <u>Exp. Corp.</u>, 89 F.3d 1244, 1254 (6th Cir. 1996).

When deciding whether to exercise supplemental jurisdiction, a court should consider factors such as judicial economy, convenience, fairness, and comity.  <u>City of Chicago v. International</u> <u>College of Surgeons</u>, 522 U.S. 156, 173 (1997).  However,   "'in the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered ... will point toward declining to exercise jurisdiction over the remaining state-law claims.'"  <u>Robert N. Clemens Trust v.</u> <u>Morgan Stanley DW, Inc.</u>, 485 F.3d 840, 853 (6th Cir. 2007) quoting <u>Carnegie-Mellon Univ. v.</u> <u>Cohill</u>., 484 U.S. 343, 350 n. 7 (1988).  Thus, "it is ordinarily prudent for a district court that dismisses a plaintiff's federal claims to decline to reach plaintiff's state law claims" unless the concerns of judicial economy and avoidance of multiplicity of litigation overrides the notion that federal courts should not "needlessly decid[e] state law issues."  <u>Sextella-Wright v. Sandusky City</u> <u>Sch. Dist</u>, 2007 WL 451498 at *2 (6th Cir. 2007).

In this case, the concerns of judicial economy, convenience and fairness do not override the accepted principle that purely state law disputes should be decided in state court, absent the existence of a basis for federal jurisdiction.  While the parties have conducted discovery in this case, there is no suggestion that the same discovery will not be of benefit to the parties in relation to litigating the state-law claim in state court.  Further the liability or non-liability of Defendants with respect to each of the seven state-law claims advanced by Plaintiffs is not altogether clear.  Accordingly, the Court will exercise its discretion and decline to entertain Plaintiffs' state-law claims.

## IV.  <u>CONCLUSION</u>

On the basis of the foregoing, the Motions for Summary Judgment filed by the Defendants (Docket Entry Nos. 28 and 33) will be granted with respect to the federal claims asserted by Plaintiffs

23

and those claims will be dismissed with prejudice. The state-law claims will be dismissed without prejudice. Plaintiffs' Request for Judicial Notice (Docket Entry No. 51) will be granted.

An appropriate Order will be entered.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE